SOCIETE INTERNATIONALE POUR PAR-
TICIPATIONS INDUSTRIELLES ET
COMMERCIALES, S. A. v. McGRANERY
et al.

Civ. A. 4360–48.

United States District Court
District of Columbia.

Feb. 19, 1953.

436

Whiteford, Hart, Carmody & Wilson and John J. Wilson, Washington, D. C. (Peider Konz and Duane G. Derrick, Washington, D. C., of counsel), for plaintiff.

Rowland F. Kirks, Asst. Atty. Gen., Director, Office of Alien Property, David Schwartz, Special Asst. to the Atty. Gen., Sidney B. Jacoby, Paul E. McGraw and Anthony W. Gross, Washington, D. C., for defendants.

Henry G. Fischer and Odell Kominers, Washington, D. C., Graubard & Moskovitz, New York City, for intervenor plaintiffs Kaufman et al.

Hogan & Hartson, Edmund L. Jones, Paul R. Connolly and C. Frank Reifsnyder, Washington, D. C. (Hans Pestalozzi, Zurich, Switzerland, of counsel), for intervenor plaintiffs Attenhofer et al.

LAWS, Chief Judge.

Plaintiff, formerly known as "I. G. Chemie" and now known as "Interhandel", is a holding corporation organized in 1928 under the laws of Switzerland, with its principal office at Basle, Switzerland. Between 1942 and 1946, all of its American assets were seized by the United States as enemy owned property. Title to the assets was vested in the Alien Property Custodian and his successor, the Attorney General of the United States, acting under Section 5(b) of the Trading with the Enemy Act, 40 Stat. 411, 50 U.S.C.A. Appendix, § 1 et seq., as amended by the First War Powers Act of 1941, 55 Stat. 839, 50 U.S.C.A.Appendix, § 5(b), and Executive Orders and regulations issued thereunder.

These assets, valued in excess of $100,-000,000, consisted of bank accounts in six New York banks and over 90% of the capital stock of the General Aniline & Film Corporation, an operating company organized under the laws of the State of Delaware and engaged principally in the manufacture of dyestuffs, chemicals, synthetic detergents, and photographic material. Accruing dividends are held by the Treasurer of the United States.

Plaintiff filed its action on October 21, 1948, in this Court for recovery of the property under Section 9(a) of the Trading with the Enemy Act, supra, alleging that it is not and was not an enemy or ally of an enemy under the terms of the Act and naming as defendants the Attorney General and Treasurer of the United States.

Defendants, hereinafter sometimes referred to as the Government, answered that I. G. Chemie, its officers, agents, and stockholders, engaged and participated in a conspiracy or common plan with I. G. Farben, a German enemy corporation, Ed. Greutert & Cie. (and its successor firm, H. Sturzenegger & Cie.), a Swiss banking partnership, and others unknown with the ultimate purpose and objective " * * * to conceal, camouflage, and cloak the ownership, control, and domination by I. G. Farben of properties and interests in many countries of the world, including the United States, other than Germany."

On January 10, 1949, plaintiff filed a motion under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. for discovery and production of some 23,000 documents in the possession of the Government for inspection, copying and photographing. The Government then filed a motion for an order, pursuant to Rule 34, directing plaintiff to produce for inspection, copying, and photographing, all documents, *not privileged, in its possession, custody, or control* relating to any matters within the scope of examination permitted by Rule 26(b), including "documents of subsidiaries of the plaintiff, Osmon A. G., and Sturzenegger & Cie."

In opposition to defendants' motion for discovery, plaintiff urged defendants had failed: (1) to designate the documents with sufficient particularity; (2) to show facts from which the court might conclude the documents were relevant and material to the issues in the case; (3) to show that the documents of its alleged subsidiary, the banking firm of H. Sturzenegger & Cie., were within the possession, custody and control of plaintiff. By opinion dated June 23, 1949, this court decided full discovery of the documents should be made by plaintiff, saying:

"As to plaintiff's claim that it is not shown to have possession, custody or control of the papers and documents sought to be inspected and copied, the Court finds a *prima facie* case of control by plaintiff is made out. If it develops that plaintiff, after *bona fide* efforts to obtain access to records of its subsidiaries, affiliates and others in which plaintiff has an interest, is unable to produce them as ordered, the question of whether further action should be taken by the Court may be considered."

Societe Internationale Pour Participations Industrielles et Commerciales, S. A. **v.** Clark, D.C.D.C.1949, 9 F.R.D. 263, 265.

In conformity with the opinion, the court issued its order of July 5, 1949, providing, in sequence: (1) inspection, copying, and photographing of Government documents by I. G. Chemie at Washington, D. C.;

(2) completion of the deposition of the witness Sturzenegger; (3) plaintiff should produce and permit inspection, copying and photographing by defendants of designated documents, including those of I. G. Chemie, H. Sturzenegger & Cie., and Osmon A. G., at Basle, Switzerland. The designation of documents, some 700 jackets, 140 account books, and lists of some 2500 original documents, was based upon their description by the Swiss Compensation Office, an arm of the executive branch of the Government of Switzerland, in a series of reports issued pursuant to an investigation into the alleged German character of plaintiff.

Copying and inspection of Government documents were completed pursuant to the court's order in September 1949. The deposition of the witness Sturzenegger was completed on May 29, 1950. Discovery of plaintiff's documents was to begin thirty days from that date.

In the interim, the court had denied a motion of the Government that the Sturzenegger documents be produced in Washington rather than Basle, Switzerland, filed on the ground that the witness Sturzenegger had indicated the papers would not be produced because it would be a crime under Swiss laws. The court likewise denied plaintiff's motion to be relieved from their production, filed on the following grounds: (1) under Swiss law plaintiff never had the power by contract, law or judicial process to compel H. Sturzenegger & Cie. to deliver its records to plaintiff; (2) Sturzenegger had indicated he felt obligated to decline to permit plaintiff to exhibit the records to defendants; (3) disclosure would violate Swiss penal laws; (4) plaintiff no longer had an interest in H. Sturzenegger & Cie.

Two weeks before plaintiff was to make discovery, by order dated June 15, 1950, the Swiss Federal Attorney, taking cognizance of the court's order of production, and considering that submission of the Sturzenegger documents would constitute a violation of Article 273 of the Swiss Penal Code (economic espionage) and Article 47 of the Bank Law (banking secrecy), seized the files and books of H. Sturzenegger & Cie. through the exercise of the preventive

police power. The seizure was not a physical taking but one of constructive possession by interdiction. H. Sturzenegger & Cie. was prohibited from transmitting its records to third persons and from permitting third persons to examine them.

Plaintiff then filed a motion, on June 22, 1950, to be relieved from that portion of the order of July 5, 1949, requiring it to produce the records of H. Sturzenegger & Cie. for inspection. The Government renewed its motion to have the Sturzenegger documents produced in the United States. Both motions were denied without prejudice, the court being of the opinion that sufficient evidence had not been presented for appropriate rulings to be made, and that the pending inspection of plaintiff's documents should proceed pursuant to the order of July 5, 1949. It was stated at that time that the order for production was to stand unimpaired.

During July and August of 1950 large quantities, although apparently not all, of the documents of I. G. Chemie were examined by defendants in Switzerland, but the papers of H. Sturzenegger & Cie. were not produced. On October 31, 1950, defendants moved for dismissal of the complaint. Plaintiff then filed a motion for reconsideration by the court of its motion of June 22, 1950, seeking relief from the court's order requiring production of the records of H. Sturzenegger & Cie. At the hearing of these motions the Government contended plaintiff had not exercised good faith in attempting to comply with the court's order. Finding it necessary to obtain development of the facts as to this alleged lack of good faith and, in that connection, the state of the law of Switzerland applicable to the seizure order of the Swiss Federal Attorney, this court submitted the questions to a Special Master previously appointed in this case. The court ordered the Special Master to take evidence and report his findings of fact and conclusions to the court for further consideration. D.C., 1951, 11 F.R.D. 294.

The Special Master submitted his report to the court on December 4, 1951, finding, in substance: (1) plaintiff had sustained the burden of proof in demonstrating its good faith in efforts to obtain production of the Sturzenegger documents; (2) there was no evidence of collusion between plaintiff and the Swiss Government in the seizure of the documents; (3) plaintiff's officers did the best they could to obtain the Swiss Government's permission to produce the papers; (4) there was a substantial legal basis for the seizure under Swiss law; (5) obtaining waivers would not appear, at any time, to offer a solution to the problem of production of the papers. These findings were reaffirmed following a hearing on newly discovered evidence, and final findings of fact and conclusions of law submitted by the Special Master on July 9, 1952. On October 15, 1952, plaintiff moved for adoption of the Special Master's report. The Government filed exceptions to the Master's report.

A motion to limit sanctions under Rule 37 of the Federal Rules of Civil Procedure, if imposed by the court, has been filed by plaintiff-intervenors Kaufman, individually and on behalf of other stockholders similarly situated, in accordance with the opinion of the Supreme Court of the United States, Kaufman v. Societe Internationale Pour Participations Industrielles et Commerciales, S. A., 1952, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853.

The following matters are before the court for consideration and decision:

1. Motion by plaintiff for adoption of the Special Master's report, and exceptions by defendants to the Special Master's report.

2. Motion by plaintiff for reconsideration of its motion of June 22, 1950, to be relieved from that portion of the order of July 5, 1949, requiring it to produce the records of H. Sturzenegger & Cie. for inspection by defendants, and that, upon such reconsideration, plaintiff's motion of June 22, 1950, be granted.

3. Motion by defendants for dismissal of complaint under Rule 37(b) for the failure of plaintiff to produce the papers of H. Sturzenegger & Cie.

4. Motion by plaintiff-intervenors to limit sanctions under Rule 37, if imposed by the court.

The court finds it is able to dispose of the questions relating to the Special Master's report with little comment. The report is well-considered and there is substantial evidence to support the findings. While it may be true plaintiff did not exercise the utmost diligence and persistence in seeking to rescind the seizure order of the Swiss Federal Attorney in respect of the Sturzenegger papers, the court finds plaintiff's efforts were those of a reasonable and prudent person in face of the obstacles confronting it. The court will overrule the Government's exceptions and adopt the Master's findings that the order of the Swiss Federal Attorney, dated June 15, 1950, confiscating the records, books, and files of the firm of H. Sturzenegger & Cie. is legally supportable under Swiss law, and that plaintiff demonstrated good faith in its efforts to secure production of the papers of H. Sturzenegger & Cie., as ordered by this court on July 5, 1949.

The disposition of the Master's report does not resolve the issues raised by plaintiff's motion to be relieved from producing the Sturzenegger papers and defendants' motion to dismiss this suit for failure of plaintiff to produce them. The Government argues that notwithstanding plaintiff's good faith, this suit must be dismissed because plaintiff has not complied with essential procedures established for the trial of cases in courts of the United States. Before the court decides this major legal point, it must determine certain preliminary questions. The court must reach a final conclusion as to whether plaintiff had control over the Sturzenegger papers but for their confiscation by the Swiss authorities. The importance of the production of the papers also must be determined. The court hitherto has found *prima facie* control by plaintiff over the papers of Sturzenegger & Cie., but since then other facts bearing upon the question have been introduced into the record.

Hans Sturzenegger is a director and an officer or managing agent of I. G. Chemie. The Special Master found that Sturzenegger is the dominant personality certainly in his own company and perhaps in both companies. He is the only unlimited partner of H. Sturzenegger & Cie.

H. Sturzenegger & Cie. is the successor banking firm of Ed. Greutert & Cie. Greutert died on September 9, 1939. Thereafter articles of agreement were drawn, dated March 28, 1941, providing for the partnership of Sturzenegger, I. G. Chemie and Industriebank, A. G., of Zurich. Business management devolved upon Sturzenegger, as the sole partner with unlimited responsibility, and he could sign singly for the partnership. I. G. Chemie was a silent, or sleeping, partner, and until 1943 held a 44% interest in its own name. Industriebank, A. G., the other limited partner, was established in 1929 with German capital. In 1931 Greutert took over the shares of Industriebank and in 1936 sold them to the present Swiss stockholders. It controls 60% of the preferred share capital of I. G. Chemie, and possesses some of Chemie's original shares. By means of options, pledges, and loans it forms a link, with three other similar companies, Perpetua, A. G., Rigidor, A. G., and Sopadep, A. G., in a tight chain of control by what has been variously called the Chemie-Greutert Complex, the Basle Circle, or the Sturzenegger Circle.

In 1945, the Swiss Compensation Office, an arm of the executive branch of the Government of Switzerland somewhat analogous to the Office of Alien Property of the Department of Justice, undertook two investigations into the degree of German participation in I. G. Chemie. Of the circle of control, the Swiss Compensation Office said, in its report on appeal:

"A conspicuous fact may be the interdependence of firms Perpetua, Rigidor, Sopadep and Industriebank, A. G., but even in this case there is nothing extraordinary about it. The group gathered around Greutert had to strengthen their position so that third parties not belonging to the Complex or representing special interests could not gain influence by purchase or inheritance."

Significantly, the primary investigation of the Swiss Compensation Office was di-

rected not only into the relationships of I. G. Chemie, but also into the business transactions of H. Sturzenegger & Cie., which was said to be very close to I. G. Chemie. No objection was then raised that the documents of H. Sturzenegger & Cie. were not in the possession, custody or control of I. G. Chemie. Both were examined together, as one. The inference is plain that an investigation of I. G. Chemie is necessarily an investigation of H. Sturzenegger & Cie.

I. G. Chemie was founded by I. G. Farben in 1928 through Ed. Greutert & Cie. as banker. Its investments were managed by H. Sturzenegger & Cie. They are in close physical proximity. Until 1940, the Swiss Compensation Office found, the majority of I. G. Chemie shares was in the possession of friendly firms and consortia of the I. G. Chemie circle or the I. G. Farben circle, and could always be controlled by Greutert & Cie.; it was above all Greutert, it was said, who tried to ward off German influence. The circle owns 39% of I. G. Chemie; counsel for plaintiff has himself stated Industriebank is the dominant stockholder of I. G. Chemie.

Plaintiff has argued that I. G. Chemie was only a sleeping partner or investor in H. Sturzenegger & Cie., that it was only entitled to be informed of the course of the partnership affairs. Under the partnership agreement, only the special delegates, one from each partner, were personally entitled to inspect the business books and papers of the partnership, and they were required to treat their knowledge as strictly confidential. However, this provision obviously was intended to keep the records from prying eyes outside the circle in the ordinary course of business and, perhaps, to preserve bank secrecy. It could not have been intended to apply where the very fortunes of the partners were at stake. Personal inspection was still open to Sturzenegger himself and to the representatives of the other partners.

Plaintiff does not seriously urge the fact that I. G. Chemie in August, 1949, completely liquidated its investment in the Sturzenegger firm is a deciding factor on the question of control, since this occurred when the motions for discovery were under consideration by the court. A party cannot self-servingly sell its way out of responsibility to make discovery.

Plaintiff lays stress upon the holding in Munroe v. United States, 1 Cir., 1914, 216 F. 107, L.R.A.1915B, 980, as squarely fitting the instant situation. But the decision of that case was clearly on different grounds. The question before the court was whether to adjudge a witness in contempt for failure to produce exhibits before a grand jury in Massachusetts called for by a subpoena duces tecum. The party subpoenaed was in New York City. The exhibits were in France, held by his partners, who had the privilege of objecting to their shipment to a foreign place. The court held there was no duty on the part of the witness in responding to the subpoena to sue and labor to produce shipment of the exhibits to the United States and absolved the witness from contempt charges. Control by a witness over documents sought by subpoena duces tecum is different from control by a party litigant over papers required to be produced for inspection. In case of the witness, the question is contempt for a willful act for not producing what he has on hand, whereas in the case of a party litigant, the question is noncompliance with procedures in the court where plaintiff has brought suit.

The other cases cited by plaintiff, In re Harris, D.C.N.Y.1939, 27 F.Supp. 480, and Galanos v. United States, D.C.Mass.1939, 27 F.Supp. 298, are not in point. In the Harris case, it was held that under the terms of the National Banking Act, 12 U. S.C.A. §§ 601–604, a bank in the United States does not have control of the records of branches located in foreign countries. The Galanos case decides only that an employee does not have control of the records of his company.

█ Certain it is that the court can pierce the corporate veil to determine the true character of the interests making up its composition. See Kaufman v. Societe Internationale Pour Participations In-

dustrielles et Commerciales, S. A., 1952, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853. Subtle relationships are necessarily to be contemplated. Cf. Morgan, Stanley & Co. v. Securities Exchange Commission, 2 Cir., 1942, 126 F.2d 325. Through the interlocked web of corporate organization, management and finance there runs the thread of a fundamental identity of individuals in the pattern of control.

On further consideration, the court now definitely concludes that the Sturzenegger papers were and are in the possession, custody or control of plaintiff and that except for their confiscation by the Swiss Federal Attorney, plaintiff would be able to produce them.

The next question to be decided is the nature and significance of the Sturzenegger papers as bearing upon the development and resolution of issues in this case.

The records of H. Sturzenegger & Cie. are conceded by plaintiff to be relevant to the issues. Counsel for plaintiff avers he is even more interested and concerned than are defendants in their production, that they are important to him in the presentation of his proof and to meet and refute the allegations of German interest and control made by the Government.

As a recital of what would be revealed by the Sturzenegger papers, the Government represents that only the Sturzenegger papers will reveal: (a) the facts concerning the Circle controlling Chemie, representing 39% of the ownership; (b) the facts concerning the stockholders of Chemie, since all of plaintiff's stock was bearer until 1945; (c) the facts concerning the ownership and activities of the Sturzenegger firm, plaintiff's dominant stockholder, a private bank once German owned; (d) the necessary information concerning the ownership of all of plaintiff's assets, virtually all of which came from Sturzenegger; (e) information concerning the nature of companies controlled by plaintiff and, in particular, concerning the investment and management of plaintiff's assets. The Government contends that by a device known as a consortium or secretariat, a kind of joint venture or enterprise between Chemie and Sturzenegger in the form of an

account on Sturzenegger's books, Sturzenegger has throughout the years invested, loaned or otherwise managed and controlled plaintiff's assets, with the result that no details whatever appear in plaintiff's books, balance sheets, or records.

The court recognizes that banking records of the transactions of a corporation are among the best possible indicia of its ownership and control. In this case some 55,000 documents are involved. Their pressing importance is apparent not only by reason of their quantity but also by reason of their quality. Their importance is evident from the fact that the Government of Switzerland made full examination of them in their investigation into the alleged German ownership of plaintiff corporation. The question before this court is precisely the same. This court's order of July 5, 1949, describes the documents of H. Sturzenegger & Cie. to be produced as those examined by Swiss officials.

Plaintiff maintains defendants are already in possession of most of the counterparts of the Sturzenegger papers, either in original or copy, through their inspection of the documents of I. G. Chemie and its subsidiary, Osmon A. G., and through seizure of the I. G. Farben papers in Germany and German-occupied countries. It is argued that the Government has the depositions of most of the principal actors in the case, and access to the remaining ones. Under the rules of United States Courts a party is not required to accept the assurance of opposing counsel as to what has been made available. He is entitled to draw his own conclusions on examination of the papers. Moreover, if it be true the Government is in possession of the papers, little purpose would be served by the seizure order of the Swiss authorities, since the facts sought to be kept secret would no doubt be made public at trial in any event. The depositions of witnesses, many of them hostile, could not secure the necessary evidence, since they can be questioned only on transactions already familiar in some measure to the Government.

The subject matter of the litigation in this court is broad and sweeping in scope. It is concerned with activities of many

persons in many countries over a number of years. The allegation of defendants is that of cloaking and concealment. If true, the nature of the activities must be ferreted out of dark and obscure corners. The lack of availability of the Sturzenegger papers for inspection for use as possible evidence in this case well might prove to be a deciding factor in the outcome of this suit.

Procedural laws, provided as a means of attaining just decisions, are fully as important to be observed as substantive laws, provided, of course, the procedural laws involve substantial points. The Federal Rules of Civil Procedure, prescribed by the Supreme Court of the United States pursuant to authority vested in the court by the Congress of the United States, 48 Stat. 1064 (1934) as amended, 28 U.S.C. § 2072 (Supp. V., 1952), provide radical departures from procedures formerly governing trials of cases. They make provision for full discovery to adversary parties before trial of evidence available to a party litigant. In Hickman v. Taylor, 1947, 329 U.S. 495 at pages 500–501, 507, 67 S.Ct. 385, at page 389, 91 L.Ed. 451, the Supreme Court of the United States stated:

" * * * civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

* * * * * *

"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."

Inspection of the Sturzenegger papers is essential if the parties are to obtain knowledge of the facts and issues before trial. The Government of the United States as a party litigant is entitled to the benefits of the procedures established in the courts.

■ The court has made inquiry whether under laws of the United States there is a privilege against producing bank records such as is claimed in Switzerland. If the United States grants immunity of bank records from inspection or copying, the courts would hesitate to insist on production of bank records in Switzerland. The court has found no law of the United States which would make banking records privileged. The decisions are to the contrary. A banker or a broker may not refuse to produce relevant documents on the ground that communications between him and his customers are confidential and privileged. Interstate Commerce Commission v. Harriman, C.C.N.Y., 1908, 157 F. 432, affirmed in part, reversed in part, on other grounds, 1908, 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253; Bowles v. Shawano Nat. Bank, 7 Cir., 1945, 151 F.2d 749, certiorari denied 1946, 327 U.S. 781, 66 S.Ct. 680, 90 L.Ed. 1008; McMann v. Securities and Exchange Commission, 2 Cir., 1937, 87 F.2d 377, 109 A.L.R. 1445, certiorari denied 1937, 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342; Limburg, The Bankers' and the Brokers' Privilege, 25 Col.L.Rev. 152 (1925); 8 Wigmore on Evidence, § 2286 (3d ed., 1940); Note, 109 A.L.R. 1450.

The court accordingly comes to consider the basic question of what action should be taken in a case in which a foreign government prohibits its national, a party plaintiff, from performing its duty to make discovery as ordered pursuant to Rules of the court.

■ The issue is not one of sovereignty or of comity, but one of jurisdiction. The court does not sit in judgment on the wisdom of the laws of a foreign sovereign. It fully recognizes and accepts the lawful and rightful exercise of prerogatives by a sovereign nation upon its own soil. Their dignity and integrity are not assailed. The question is when, upon the exercise of this sovereign power, it becomes impossible for a subject to comply with established procedures in this court for securing evidence, shall this court permit trial of the case? Or shall it rescind its order to pro-

duce? The question appears to be a novel one, not hitherto decided by a court of the United States.

 The Congress of the United States, in enacting the Trading with the Enemy Act, opened the doors of courts of the United States to permit those claiming to be neutrals, as well as citizens of the United States, to assert ownership of properties seized by the United States as belonging to enemy aliens. This Act, being one by which the sovereign consents to be sued, is one of grace, subject to revision or complete repeal at any time. Cf. Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434. A privilege has been conferred, and conformity to the customary procedures established for the Courts of the United States is required. Cummings v. Deutsche Bank Und Discontogesellschaft, 1937, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545; Banco Mexicano de Commercio e Industria v. Deutsche Bank, 1924, 263 U.S. 591, 44 S.Ct. 209, 68 L.Ed. 465; Pflueger v. United States, 1941, 73 App.D.C. 364, 121 F.2d 732, certiorari denied 1941, 314 U.S. 617, 62 S.Ct. 98, 86 L. Ed. 497. "No man can sue in the courts of any country, whatever his rights may be, unless in conformity with the rules prescribed by the laws of that country." Marshall, C. J., in Dixon's Adm'r v. Ramsay, 1806, 3 Cranch 319, 324, 2 L.Ed. 453, 455. A claimant must take the law as he finds it; he cannot place himself in a better position than other litigants by invoking the laws and procedures of a foreign sovereign. De La Vega v. Vianna, 1 B. & D. 284, 109 Eng. Rep. 792 (K.B., 1830); Don v. Lippmann, 5 Cl. & Fin. 1, 7 Eng.Rep. 303 (H.L., 1837).

 Procedures of the law of the forum customarily govern law suits. Neutrals as well as citizens of the United States must meet the requirements of these procedures. It seems obvious that foreign law cannot be permitted to obstruct the investigation and discovery of facts in a case, under rules established as conducive to the proper and orderly administration of justice in a court of the United States. Even if a foreign government were itself a party, it must conform to the law of the forum and make discovery upon order of

the court. Rothschild v. Queen of Portugal, 3 Y. & C. 594, 160 Eng.Rep. 838 (Exch., 1839); Republic of Haiti v. Plesch, 1949, 195 Misc. 219, 88 N.Y.S.2d 9.

 The danger of incrimination in another jurisdiction or claim of foreign law or foreign privilege is not a valid excuse for a refusal to give testimony. United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210; Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. McGrath, D.C.D.C. 1950, 9 F.R.D. 680. The principle is the same, whether the information is locked in the breast of a party by a foreign government's order or whether it is locked in its chests or vaults by the same government order.

To adopt any other course would lead only to frustration and nullification of established procedures. It would permit a foreign government to release only the documents favorable to one party and to retain or destroy the rest. It would permit a foreign government to stipulate the conditions under which documents required in a court of the United States might be released and thus impose foreign procedures in trials of suits in United States Courts. It would permit a foreign party to be placed in a favored position by the laws or action of his government. It might defeat the purposes of the Trading With the Enemy Act by permitting a foreign national to bring suit in this country to recover property seized under the Act and then seek shelter under the protective cloak of its government when discovery is sought.

This reasoning is fortified by decisions of British prize cases arising during World War I: The Consul Corfitzon (1917) App. Cas. 550; The Baron Stjernblad (1918) App.Cas. 173; The Kronprinzessin Victoria (1919) App.Cas. 261; Kronprinzessin Margareta, 6 Lloyd's Prize Cases 105n. (1917); The Antilla, 7 Lloyd's Prize Cases 401 (1918); and an English patent case of the Second World War, In re von Kantzow's Patent (1944) Ch. 318. The cases are persuasive, not only for their decisions but for their reasoning and application of principles. The Trading With

the Enemy Act is concerned with captures on land. The law of prize is concerned with captures at sea. Both are facets of the law of war. See Stoehr v. Wallace, 1921, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604; Learned Hand, J., in Stöhr v. Wallace, D.C.N.Y.1920, 269 F. 827; Mr. Justice Stanley Reed, dissenting on other grounds, in Kaufman v. Societe Internationale Pour Participations Industrielles et Commerciales, S. A., 1952, 343 U.S. 156, at page 167 note, 72 S.Ct. 611, 96 L.Ed. 853.

■ In the British prize cases, claimants, citizens of Sweden, were ordered to make discovery under an order or rule of the court similar in content to Rule 34 of the Federal Rules of Civil Procedure. See The Consul Corfitzon, supra, at 551n. (2). Claimants resisted, on the grounds that they were precluded by Swedish law from revealing information or opening their books to foreign powers. The court struck the claims, holding that neutral claimants must comply with the discovery requirements of the forum. While the substantive law administered by the prize court was international law, its practice and procedure were governed by the municipal law of the State from which the court derived its jurisdiction, and could not be modified by the municipal law of any other State. The Consul Corfitzon, supra. The court cannot accept the dictates of any municipal law other than its own as to what discovery ought or ought not to be insisted upon either generally or in any particular case. The Baron Stjernblad, supra. It is impossible for a court to allow its investigation of the truth of matters brought before it to be limited by the restrictions of the municipal law affecting one of the parties to the proceedings before it. The Kronprinzessin Victoria, supra. The refusal of a foreign government to permit discovery can make no difference to the court. Kronprinzessin Margareta, supra. A claim may be struck even though the other party has had inspection of many documents besides those relating to the particular matters in question and a different view of the order for discovery is taken by the claimant's government. The Antilla, supra. The neutral is as responsible for the actions of his own government as a cargo owner for the action of the master or crew of the vessel on which the cargo is shipped. The Baron Stjernblad, supra. If his position is anomalous, it certainly is not due to any defect in the practice of the court or the law it administers. Ibid. If an applicant is the subject of a foreign State and is precluded from giving the necessary information to the court, that is his misfortune. In re von Kantzow's Patent, supra. The rule is the same, whether it is left to his discretion by his government to make discovery and thereby violate his municipal law, as in The Antilla, supra, or whether there has been a direct prohibition by his government, as in The Baron Stjernblad, supra.

Counsel for plaintiff cites Securities and Exchange Commission v. Minas de Artemisa, S. A., 9 Cir., 1945, 150 F.2d 215, for the proposition that a Federal Court of the United States will take into consideration the impact which the laws of a foreign country may have upon its orders, and will cut or prune them accordingly. That decision is not in conflict with the opinion of the court in this case. A federal court there ordered a corporation subject to its jurisdiction to produce in the United States books and records located in Mexico; the Court of Appeals ruled that the order had been improperly drafted, since the laws of Mexico prohibited their removal. The question before the court was one of accommodation and convenience, not of ultimate production. No secrecy laws were involved, production itself was not resisted; the required books and records could be inspected at the office in Mexico, authenticated copies could be furnished, and the Court of Appeals so directed.

■ For the reasons stated, this court finds itself constrained to decide that an order dismissing plaintiff's suit is required if the Sturzenegger papers are not made available. Such dismissal is not by way of punishment for contempt or for contumacy, for an intentional and wilful flouting of the court's authority, or for an offense to its dignity. It is rather by way

446

of denying the right of a plaintiff to proceed without obeying established court procedures. If plaintiff had failed to file a complaint seasonably within the time allowed by law, or had failed to state sufficient facts to show the pleader was entitled to relief, or had filed the complaint before a court without jurisdiction of the parties or the subject matter, the same result would follow.

■ The order of dismissal appears to be justified under Rule 37(b) (2) (iii) of the Federal Rules of Civil Procedure. Rule 37(b) (1) provides that a refusal to be sworn or to answer a question may be considered a contempt of court. Of course, contempt of court involves a wilful act. Rule 37(d) enumerates the sanctions which may be imposed for the *wilful* failure to appear or to serve answers. Here the word "wilful" is used. These two rules therefore clearly deal with wilful acts. However, Rule 37(b) (2) (iii) makes no mention of contempt or wilful refusal. The word "refusal" is defined as synonymous with "declination" (Webster's New International Dictionary, 2d Ed., Unabridged, p. 2095). In this case we have noted that plaintiff with the Sturzenegger papers in his actual possession has "refused" or "declined" to exhibit them as ordered by this court. That plaintiff may have had good reason for its refusal would make the act nonetheless a refusal. In the original Advisory Committee Note of 1937 to Rule 37 of the Federal Rules of Civil Procedure, the following appears:

> "The provisions of this rule authorizing orders establishing facts or excluding evidence or striking pleadings, or authorizing judgments of dismissal or default, for refusal to answer questions or permit inspection or otherwise make discovery, are in accord with Hammond Packing Co. v. Arkansas, 1909, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530; 15 Ann.Cas. 645, which distinguishes between the justifiable use of such measures as a means of compelling the production of evidence, and their unjustifiable use, as in Hovey v. Elliott, 1897, 167 U.S. 409, 17 S.Ct.

841, 42 L.Ed. 215, for the mere purpose of punishing for contempt."

Duell v. Duell, 1949, 85 App.D.C. 78, 178 F.2d 683, 14 A.L.R.2d 560, cited by plaintiff, is not inconsistent with the court's power to deal with failure to produce documents, whether wilful or not. In that case the court rejected the striking of a pleading by reason of an adjudication in contempt for failure of defendant in a divorce suit to produce records. The court held there was no showing defendant suppressed or failed to produce evidence in his possession which had been ordered produced. It further held that civil contempt proceedings might not be used as the basis for striking a pleading. No decision was made as to the power of the court to strike a pleading on motion for failure to produce records in the party's possession as ordered by the court. In Wittenberg Coal Co. v. Compagnie Havraise Peninsulaire de Navigation à Vapeur, 2 Cir., 1927, 22 F. 2d 904, 905, the Circuit Court of Appeals for the Second Circuit upheld a decree pro confesso entered under a rule of admiralty for a persistent refusal to answer interrogatories, and said: "The refusal to answer the interrogatories is more than a contempt. It was a failure of the appellant to give information which the appellee was entitled to under the rules in admiralty."

■ The power of the court to issue an order of dismissal for failure of a party to produce designated documents has been recognized from the earliest days of the Republic, in Article 15 of the Judiciary Act of September 24, 1789, 1 Stat. 82, 28 U.S.C. § 636 (1946), repealed by the Revised Judicial Code of 1948, 62 Stat. 869. This Act is the parent of Rule 34 of the Federal Rules of Civil Procedure. It was repealed by the Judicial Code because it had been superseded by the Federal Rules. 4 Moore's Federal Practice, 2429–2430n, 2428 (2d ed., 1950). The Federal Rules thus establish that the proper time for the inspection of documents is before trial, as an integral part of the purposes of the Rules to narrow and clarify the issues and to ascertain the facts of the case. "The way is now clear, consistent with

recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial. * * * The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise." Hickman v. Taylor, supra, 329 U.S. at page 501, 507, 67 S.Ct. at page 389.

But apart from dismissal by authority of specific rule of court or statute, a court has inherent power to dismiss a suit, stay a trial or impose other limitations on the right to proceed with trial when it is established a party plaintiff has failed to comply with order of the court issued pursuant to its rules. See Refior v. Lansing Drop Forge Co., 6 Cir., 1942, 124 F.2d 440, certiorari denied 1942, 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746; Note, 4 A.L.R.2d 348. If this were not so, a court would be powerless to enforce its rules and a litigant might ignore them with abandon. In cases where plaintiffs have refused to comply with essential court procedures, the court customarily has stayed the trial until the procedures have been complied with; and if it has later developed with certainty the procedures will not be followed, the court has denied relief by dismissing the suit.

A final point made by plaintiff may be disposed of briefly. The claim is that an order of dismissal would constitute a denial of due process of law in violation of the Constitution of the United States, Amend. 5. Plaintiff has had a hearing. It has had its day in court. The order is entered upon motion and notice; plaintiff has had full opportunity to comply with the order of the court. Hammond Packing Co. v. Arkansas, supra, clearly establishes the want of foundation in this contention. Rather it appears to the court that due process would be denied if a foreign government were to be allowed to frustrate the procedures established in the courts of the United States.

The attention of the court has been directed to a statement of the Swiss Federal Attorney on June 25, 1951, as reported in the findings of the Special Master:

"* * * we are prepared to release individual documents proved to be indispensable for the suit, insofar as explicit statements are produced. for each one of these documents by all the parties having an interest in them (banking firm H. Sturzenegger & Co., its clients and other individuals or juridical persons participating), from which it should be clearly evident that there is neither a violation of Art. 273 St. GB (economic espionage) nor of Art. 47 of the Bank Law (bank secrecy). The Office of the Swiss Federal Attorney explicitly reserves itself the right to refuse to release individual documents without stating grounds for this."

For three and one-half years, since the order of July 5, 1949, was promulgated, plaintiff has been on notice that the Sturzenegger documents must be produced. For two and one-half years it has been in legal default of that order. At no time during that long period has it been excused from its duty to produce. It may be, as contended by the Government, this offer by the Swiss Federal Attorney as a means of producing the required papers is illusory. It may also be true attempts should have been made by plaintiff long before this. The court notes the Special Master has found that obtaining waivers would not appear at any time to offer a solution to the problem of production of the papers. But this court is of opinion it should extend further opportunity to plaintiff to comply with the order to produce the documents designated. Especially is this true since a court of the United States has now, apparently for the first time, made clear that full production of the papers is essential to permitting a trial of this case and cannot be excused because of prohibitions of plaintiff's government. The court therefore will suspend the effective date of its order of dismissal of plaintiff's complaint for a limited period of about three months to permit plaintiff to apply for release of the documents in accordance with the statement of the Swiss

Federal Attorney. If then it develops full disclosures are not permitted, this suit will be dismissed with prejudice so far as plaintiff is concerned.

 While the motions before the court were under advisement, plaintiff filed with the court a motion to require defendants to cooperate with plaintiff in preparing applications to the Swiss Federal Attorney for the release of documents. The duty to produce the documents in conformity with the order of the court rests upon plaintiff, and the court will not transfer that responsibility to defendants. If plaintiff must seek waivers, it is because its government chooses to enforce a foreign law of privilege, the banker-customer privilege, not recognized in the law of this forum where plaintiff has brought suit. The motion accordingly is denied. The court assumes defendants will not in anywise obstruct the efforts of plaintiff to secure production of the papers.

Under the decision of the Supreme Court of the United States in Kaufman v. Societe Internationale Pour Participations Industrielles et Commerciales S. A., 1952, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853, if a final order of dismissal against plaintiff is entered, intervenor plaintiffs may yet maintain their suit, it appearing that they never had possession, custody or control of the pertinent documents.

The court will make disposal of pending motions as follows:

1. Overrule defendants' exceptions to the Special Master's Report. Grant plaintiff's motion to adopt the said Special Master's Report.

2. Overrule plaintiff's motion to be relieved from producing the Sturzenegger papers for inspection and copying as ordered on July 5, 1949.

3. Grant defendants' motion to dismiss plaintiff's suit, provided however, such dismissal shall not become effective until a date about 3 months hence, in order that plaintiff may have further opportunity to produce the Sturzenegger documents as ordered by this court.

4. Overrule plaintiff's motion to require defendants to cooperate with plaintiff in preparing applications to the Swiss Government for production of the Sturzenegger papers.

5. Grant the motion of intervenor plaintiffs that the dismissal of this suit shall not apply as to their claims.