SOCIETE INTERNATIONALE POUR PARTICIPATIONS INDUSTRIELLES ET COMMERCIALES S.A., etc., Appellant,

v.

Herbert BROWNELL, Jr., Attorney General of the United States, as Successor to the Alien Property Custodian, et al., Appellees.

No. 12140.

United States Court of Appeals District of Columbia Circuit.

Argued November 29, 1954.

Decided June 30, 1955.

Petition for Rehearing In Banc Denied Sept. 1, 1955.

See, also, 15 F.R.D. 83.

Mr. John J. Wilson, Washington, D. C., with whom Mr. Roger J. Whiteford, Washington, D. C., was on the brief, for appellant.

Asst. Atty. Gen. Dallas S. Townsend, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, and Mr. David Schwartz, Atty. Dept. of Justice, with whom Messrs. George B. Searls, Sidney B. Jacoby, Paul E. McGraw and Ernest S. Carsten, Attys., Dept. of Justice, were on the brief, for appellees.

Before WILBUR K. MILLER, FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

The District Court dismissed a complaint filed therein by I. G. Chemie[1] against the Attorney General of the United States, as successor to the Alien Property Custodian, and the Treasurer of the United States.[2] The complaint was filed October 21, 1948, under the provisions of Section 9(a) of the Trading with the Enemy Act, 40 Stat. 411, 419, as amended, 50 U.S.C.A.Appendix, § 9(a), to recover properties allegedly valued at more than $100,000,000 which the Custodian had vested, under Section 5(b) of the Act and regulations thereunder, as the property of foreign nationals or of German interests.[3] The property vested is over 90% of the stock of General Aniline & Film Corporation, of Delaware, and some $1,800,000 in various bank accounts and securities. I. G. Chemie itself is a Swiss holding corporation having its domicile at Basle, Switzerland. It claims ownership of the vested stock of General Aniline & Film Corporation and of the cash. It asserts that it is not an enemy within the meaning of the Act and, accordingly, availed itself first of the statutory procedure for seeking return of the property by filing an administrative claim with the Custodian. See § 9(a) of the Act. Upon denial of its administrative claim Chemie, as also authorized by § 9(a), sued in the District Court for recovery of the property. The Custodian in his answer denied the property was owned by Chemie and also denied Chemie's allegations that it was not an enemy within the meaning of the Act.

The pleadings came to issue on these conflicting claims of ownership and enemy character.

On July 5, 1949, with the pleadings in the situation outlined, the District Court, Chief Judge Laws sitting, on cross-motions, ordered both Chemie and the Custodian to produce for inspection certain documents.[4] Among those ordered to be produced by Chemie were records of H. Sturzenegger & Cie., a Swiss banking concern domiciled, like Chemie, in Basle. Before their production, however, constructive possession of these documents was taken by the Swiss Federal Attorney on June 21, 1950, by his order of June 15, 1950, or, as is sometimes referred to in the proceedings, he seized or confiscated them. His order recited that their production would constitute the fact of prohibited economic espionage under Article 273 of the Swiss Penal Code and would also violate bank secrecy under Article 47 of the Swiss Bank Law "which offense the Federal Authorities have to prevent in order to maintain the public security and order on the basis of their preventive police power". Chemie thereupon, June 22, 1950, moved in the District Court to be relieved of that portion of the order of July 5, 1949, which required it to produce the Sturzenegger records for inspection by the Custodian, stating, as counsel were informed by cable of June 21, 1950, that Sturzenegger & Cie. had been prohibited by order of the Swiss Federal Attorney from delivering its records for such inspection.

On October 31, 1950, the Custodian moved to dismiss the complaint under Rule 37(b) (2), Fed.R.Civ.P., 28 U.S.

1. We use this designation, or Chemie, for brevity in referring to the plaintiff in the District Court, the appellant in this court. The fuller name of the party is Societe Internationale Pour Participations Industrielles et Commerciales S. A. and Internationale Industrie- & Handelsbeteiligungen A.G. The plaintiff is also known as "Interhandel".

2. See Executive Order No. 9788, October 14, 1946, 50 U.S.C.A.App. § 6 note, 11 Fed.Reg. 11981. The Attorney General and Treasurer are referred to for simplicity as the Custodian.

3. See, e. g., Vesting Order of February 16, 1942, 7 Fed.Reg. 1046; Vesting Order No. 5 of April 24, 1942, 7 Fed.Reg. 3148; Vesting Order 907 of February 15, 1943, 8 Fed.Reg. 2453.

4. See opinion of Chief Judge Laws of June 23, 1949, Societe Internationale Pour Par., etc. v. Clark, D.C.D.C., 9 F.R.D. 263, 13 Fed.Rules Serv. § 34.11, Case 1.

**534**

C.A., for failure of Chemie to produce the Sturzenegger papers. The Custodian also filed a motion for such relief as should be deemed just and appropriate, including a ruling that all matters which defendants could possibly show by the papers be taken as proven. This motion stated that because of the seizure the court's order of July 5, 1949, would not be complied with by Chemie in Switzerland, and intimated the seizure was procured, and could be undone, by Chemie.

With the matter unresolved the court by order of March 1, 1951,[5] ordered William J. Hughes, Jr., Esq., as Special Master to hold proceedings and take evidence as to the good faith of Chemie in its efforts to comply with the production order of July 5, 1949, and directed him to report his findings and conclusions to the court for consideration in connection with Chemie's motion, filed November 28, 1950, for reconsideration of its motion of June 22, 1950, to be relieved of producing the papers. On December 4, 1951, the Special Master filed his opinion, and on July 9, 1952, filed his findings of fact and conclusions, which on Chemie's motion were adopted by the court March 31, 1953. The Special Master found no evidence of collusion between Chemie and the Swiss Government in the matter of the seizure. He made a detailed report favorable to Chemie's conduct in the matter, including its good faith. The District Court said of this report:

"* * * The report is well-considered and there is substantial evidence to support the findings. While it may be true plaintiff did not exercise the utmost diligence and persistence in seeking to rescind the seizure order of the Swiss Federal Attorney in respect of the Sturzenegger papers, the court finds plaintiff's efforts were those of a reasonable and prudent person in face of the obstacles confronting it. The court will overrule the Government's exceptions and adopt the Master's findings that the order of the Swiss Federal Attorney, dated June 15, 1950, confiscating the records, books, and files of the firm of H. Sturzenegger & Cie. is legally supportable under Swiss law, and that plaintiff demonstrated good faith in its efforts to secure production of the papers of H. Sturzenegger & Cie., as ordered by this court on July 5, 1949."

Societe Internationale, etc., v. McGranery, D.C.D.C., 111 F.Supp. 435, 440.

The Court also said, however, that the Special Master's report did not resolve the issue either of Chemie's motion to be relieved of production or of the Custodian's motion to dismiss Chemie's complaint.

Some additional facts should be adverted to before coming more closely to grips with the court's ultimate dismissal of the complaint. After the court ordered the Sturzenegger records to be produced Chemie made unsuccessful efforts to obtain their release by the Swiss authorities. Chemie and the Sturzenegger Bank also sent letters to some of the latter's customers seeking waivers of their secrecy rights in the records. The court by various orders extended the time for compliance into the month of October, 1953. During the intervening period waivers were obtained from a substantial number of persons and over 9,000 documents[6] were cleared by the Swiss Federal Attorney. The process of obtaining waivers continued until some 63,000 documents were cleared and re-

---

5. See opinion of Chief Judge Laws, Societe Internationale, etc. v. McGrath, D.C.D.C., 11 F.R.D. 294.

6. This figure is taken from an affidavit filed in the District Court July 14, 1953, by one of the Swiss counsel for plaintiff, in support of an annexed motion for further extension of time. In the affidavit counsel stated that at the time of his departure from Switzerland in July, 1953, the Swiss Federal Attorney "had cleared over 9,000 documents, subject, however, to their being photostated."

leased for inspection and were tendered [7] to the Custodian for that purpose on October 15, 1953. In an affidavit filed a few days later Chemie's counsel stated that of the 124 waivers and consents he had solicited, 91 consents had been received, though 17 of them did not appear primarily to involve Sturzenegger papers. A few persons had refused to waive, a few others were dead or did not respond, or were liquidated corporations whose successors could not be located. As to 3 there was evidence that there were no papers pertaining to them. No account books of H. Sturzenegger & Cie. were then tendered although Chemie advised the Custodian of a plan to be submitted to the Swiss government for photostating parts of books the entire contents of which were not cleared, with the matter declared secret blacked out.

By October 20, 1953, Chemie was unable to assure the court that full compliance would be made even if more time were granted. The court thereupon, in a memorandum dated November 16, 1953, stated its opinion that it was unlikely Chemie could make full production, as had been required by the Swiss government itself in its own earlier investi-

gations of Chemie's ownership. By order of December 21, 1953, the court (a) granted Chemie's motion of the previous July 14th to extend to September 15, 1953, the time for production, (b) denied Chemie's motion of October 15, 1953, to vacate in part the order of March 31, 1953, and to extend further the time for production, and (c) dismissed the complaint, with prejudice. This last action is the ultimate subject of our review on this appeal.

Chemie's appeal from the dismissal of its complaint leaves unaffected certain counterclaims filed by the Custodian and certain claims of intervening minority stockholders of Chemie to interests in the vested property. See Rule 54(b), Kaufman v. Societe Internationale, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853, and Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. McGrath (McGranery), 17 Fed. Rules Serv. § 24a.2, Case 3 (D.C.D.C.).[8]

The District Court based its dismissal of the complaint on two separate but related grounds, of which Rule 37(b) (2) [9] is more elaborately analyzed by the parties in this court.[10] The court read this

---

**7.** The tender was in the form of a letter to the Custodian inviting him to "begin the inspection of Sturzenegger documents" at the offices of plaintiff's counsel in Washington, D. C. The Custodian refused the offer on the grounds that the documents proffered constituted only a part of those ordered produced by the court's order of July, 1949, and that such selective and partial compliance would be rejected. It is not clear from the record what percentage of the papers ordered produced by the July, 1949, order was represented by the 63,000 documents tendered.

**8.** The order of December 21, 1953, dismissing the complaint, with prejudice, expressly states that it "shall not apply to the claims of intervenors Kaufman, Attenhofer, and Klingler or to the claims of any other stockholders hereafter properly admitted as intervenors in this case."

In Kaufman, decided April 7, 1952, the Supreme Court reversed this court's decision, 88 U.S.App.D.C. 296, 188 F.2d 1017, and held that the petitioners, who

claimed to be non-enemy minority shareholders in Interhandel, were entitled to intervene as of right under Rule 24(a) (2) in the corporation's suit to recover its seized assets from the Custodian.

Subsequently, on October 23, 1952, the District Court, Pine, J., granted Attenhofer's motion for leave to intervene, which motion Kaufman had opposed. The Master's opinion on the motion had referred to the Attenhofer group as "a management-sponsored group—some of the management are members of it". See 17 Fed.Rules Serv. § 24a.2, Case 3, p. 396.

**9.** The District Court pointed out, 111 F. Supp. at page 446, that this rule had its parentage in Article [Section] 15 of the Judiciary Act of September 24, 1789, 1 Stat. 82, 28 U.S.C. § 636 (1946), repealed by the Judicial Code of 1948, 62 Stat. 869, 992.

**10.** The court also, in its order of December 21, 1953, made an express determination, pursuant to Rule 54(b), Fed.R. Civ.P., that there was "no just reason for delay in entering final judgment dismissing plaintiff's complaint". This Rule

Rule in conjunction with Rule 34,[11] which provides that the court on motion may order any party to produce and permit inspection and copying or photographing of any designated documents, papers, books, accounts, etc., not privileged, "which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control * * *." It is clear the papers here in question are within the scope of examination permitted by Rule 26(b), that is, that they are not privileged and are relevant to the subject matter of the action. These criteria are again referred to in this opinion.

■ Rule 37(b) (2), which deals with the consequences of failure to comply with a Rule 34 order to produce, provides that the court may "make such orders in regard to the refusal as are just, and among others the following:

"* * * (iii) An order * * * dismissing the action * * *."[12]

In addition, Rule 41(b), Fed.R.Civ.P., provides that

"For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defend-ant may move for dismissal of an action or of any claim against him."

In determining whether a dismissal is just under Rule 37 for non-compliance with an order to produce under Rule 34, the provisions of Rule 37 dealing specially with that problem, not Rule 41, should govern. No contrary view was expressed by the court below. Nevertheless, Rule 41 does add its influence in any consideration of the power of the District Court to dismiss a complaint otherwise than by reason of Rule 37.

Confining the discussion for the time being to Rule 37, read with Rule 34, we accept the express conclusions of Chief Judge Laws, unless a different finding is required by the action of the Swiss government, that the papers of H. Sturzenegger & Cie. are in the possession, custody or control of Chemie, see 111 F. Supp. at page 442, and the basic finding implicit in his opinion that they are also within the scope of examination permitted by Rule 26(b) and not privileged.[13] Chemie vigorously contests the conclusions of the District Court as to possession, custody or control; but we accept them. They are set forth clearly and with sufficient fullness in the opinion of Chief Judge Laws of February 19, 1953, 111 F.Supp. 435, in view of which it

authorizes the court to enter a final judgment on one or more but less than all of the multiple claims in an action only upon making such a determination and an express direction for the entry of judgment. See David v. District of Columbia, 88 U.S.App.D.C. 92, 187 F.2d 204.

11. "Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control; or (2)

order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the scope of the examination permitted by Rule 26(b). The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just." Rule 34, Fed.R.Civ.P.

12. Subparagraph (iii) reads in full as follows:

"(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;"

13. No contention is made in this court that they are privileged.

seems unnecessary for us to elaborate again the factual details. We will, however, discuss the effect of the laws and actions of Switzerland on these subjects. Before doing so we point out that the narration in Chief Judge Laws' opinion of the relation of Hans Sturzenegger to I. G. Chemie, his dominant position with respect to H. Sturzenegger & Cie., which is the successor to Ed. Greutert & Cie., the relation of the three companies to one another and to other companies, including, on information now available, I. G. Farben and other German interests, cannot be said by us to be erroneous. After thorough acquaintance with the case in its various stages over a period of years Chief Judge Laws said he "definitely concludes that the Sturzenegger papers were and are in the possession, custody or control of plaintiff and that except for their confiscation by the Swiss Federal Attorney, plaintiff would be able to produce them." 111 F.Supp. at page 442. This finding rests upon a discussion of the evidence which traces the history of the close connection between I. G. Chemie and H. Sturzenegger & Cie. For any purpose relevant to Rules 34 and 37 the findings are sufficient in form and definiteness; and, for purposes of our favorable review, find adequate support in the record. We accept also the further finding and conclusion of the District Court that the Sturzenegger papers are relevant to the issues raised by the complaint of Chemie. We do not understand Chemie to urge the contrary. A number of grounds are set forth in the opinion of the court, 111 F.Supp. at page 442, as representing the Government's position with respect to relevancy, followed by the court's recognition that "banking records of the transactions of a corporation are among the best possible indicia of its ownership and control." The court there also said:

"The records of H. Sturzenegger & Cie. are conceded by plaintiff to be relevant to the issues. Counsel for plaintiff avers he is even more interested and concerned than are defendants in their production, that they are important to him in the presentation of his proof and to meet and refute the allegations of German interest and control made by the Government."

As we have indicated, the papers in question are relevant, are not privileged, and, except for the laws and actions of the Swiss government, are in Chemie's possession, custody or control for the purposes of Rule 34. It does not follow, however, that Chemie's failure to produce them necessarily requires dismissal of its complaint with prejudice, under Rule 37(b) (2) (iii). We consider first, however, whether the action of the Swiss government, and Chemie's good faith, bar such dismissal.

As previously set forth, the Swiss Federal Attorney's order of June 15, 1950, recited that production of the papers would constitute the fact of prohibited economic espionage under Article 273 of the Swiss Penal Code and would also violate bank secrecy under Article 47 of the Swiss Bank Law, "which offense the Federal Authorities have to prevent in order to maintain the public security and order on the basis of their preventive police power". Pursuant to the order he constructively took possession of the papers, or, as we have also said, he seized or confiscated them. Chemie contends that this removed the papers from its "control" within the meaning of Rule 34, even if otherwise they were within such control. This contention no doubt centers upon "control", rather than "possession" or "custody", because physically the papers remained in the possession or custody of Chemie, though subject to the control exercised by the Federal Attorney. Since his constructive seizure of the records was subsequent to the District Court's order requiring their production, his action bears upon the validity of the dismissal rather than upon the validity of the District Court's order when made.

Rule 37(b) (2), as we have seen, provides that when a party refuses to obey an order to produce under Rule 34 the court may make such order as is just, in-

cluding one dismissing the action. See subparagraph (iii). Did Chemie refuse to obey? Or, on the contrary, has it merely been unable to obey? If the latter, does its inability, though involuntary, nevertheless constitute a refusal under the Rule? The District Court thought it did. Pointing out that Chemie had the Sturzenegger papers in its actual possession but declined to exhibit them as ordered, the court said,

"* * * That plaintiff may have had good reason for its refusal would make the act nonetheless a refusal." 111 F.Supp. at page 446.

The court then referred to the Advisory Committee Note of 1937 to Rule 37, to the effect that the provisions of the Rule authorizing judgment of dismissal for refusal to make discovery accords with Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530, which, the Note continues, distinguishes between the justifiable use of such a measure to compel production of evidence and its unjustifiable use as punishment for contempt, condemned in Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215. Hammond Packing Co. v. Arkansas [212 U.S. 322, 29 S.Ct. 380] involved a refusal to produce which the Court termed a "failure by the defendant to produce what we must assume was material evidence in its possession," and which defendant had the power to produce. It followed, the Supreme Court said, that the entry of a default judgment against defendant found its sanction,

"* * * in the undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause." 212 U.S. at pages 350–351, 29 S.Ct. at page 380.

In the case at bar our concurrence in the District Court's adoption of the Special Master's report precludes consideration of whether Chemie's efforts to secure the documents were in bad faith, or of whether Chemie could have produced them without violating the Swiss secrecy laws. Hammond Packing Co. v. Arkansas accordingly seems inapplicable.

■ Nevertheless, we think it unnecessary to decide whether Chemie's "failure" to produce in the circumstances was such a "refusal" within the meaning of Rule 37 as warranted dismissal of its complaint with prejudice. For it is not a condition to the exercise of the power to dismiss that Chemie's inability to produce be construed as a "refusal". Specification in the Rule of remedial action available to a District Court upon a party's refusal to obey a Rule 34 order does not exhaust the court's powers. This is especially so where the action of a foreign sovereign, though a friendly one, has given rise to the problem, creating a situation hardly contemplated by the framers of Rule 37. Yet we cannot think they intended that a District Court would be powerless to solve the problem in a just manner, consistently with due process of law. We agree with Chief Judge Laws that the power to dismiss is not dependent upon the terms of Rule 37; that is to say, we think it unnecessary to find a refusal within the meaning of that Rule. As he said:

"* * * apart from dismissal by authority of specific rule of court or statute, a court has inherent power to dismiss a suit, stay a trial or impose other limitations on the right to proceed with trial when it is established a party plaintiff has failed to comply with order of the court issued pursuant to its rules. See Refior v. Lansing Drop Forge Co., 6 Cir., 1942, 124 F.2d 440, certiorari denied 1942, 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746; Note, 4 A.L. R.2d 348. If this were not so, a court would be powerless to enforce its rules and a litigant might ignore them with abandon. * * *" (111 F.Supp. at page 447.)

Rule 37 apart, Rule 41(b) would permit dismissal for "failure" of the plain-

tiff to comply with an order of the court, thus reflecting the power thought by the Rule framers to reside in the court aside from the specific confines of Rule 37.

In the end the question turns upon whether the particular exercise of the power to dismiss with prejudice is consistent with due process of law. We advert now to factors which lead us to conclude that the power as exercised in the present case meets this constitutional test. The property of Chemie, a corporate national of Switzerland, had been vested under the Trading with the Enemy Act. See Kaufman v. Societe Internationale, 343 U.S. 156, 159, 72 S.Ct. 611, 612, 96 L.Ed. 853. There, in referring to Clark v. Uebersee Finanz-Korp., 332 U.S. 480, 68 S.Ct. 174, 92 L. Ed. 88, the Court said:

"* * * We there held that the 1941 amendment [to the Trading with the Enemy Act] authorized the Custodian to seize and vest in himself all property of any foreign country or national, even that of friendly or neutral nations. At the same time we refused to hold that the 1941 amendment deprived friendly or neutral nations or nationals of a right to have their assets returned if they could prove that they were free of any open or concealed enemy taint. * * * *"

These cases demonstrate that Congress intended by Section 9(a) of the Act to permit any corporation of a neutral or friendly state to recover property vested under Section 5(b) if "not an enemy or ally of enemy" or, as said in Kaufman v. Societe Internationale, supra, 343 U.S. at page 159, 72 S.Ct. at page 612, "if

they could prove that they were free of any open or concealed enemy taint." Chemie having filed its action under Section 9(a) to recover property vested under Section 5(b) the principal issue on the merits is whether it was enemy tainted within the principles of Clark v. Uebersee Finanz-Korp., supra. As we have set forth, and as is more fully detailed in the opinion of Chief Judge Laws, the Sturzenegger papers are material on this issue. They were ordered produced. If the Swiss authorities had not then intervened, and if Chemie had wilfully refused to comply with the order, dismissal of its complaint with prejudice, based on such refusal, would not have been an unconstitutional deprivation of property, Hammond Packing Co. v. Arkansas, supra, 212 U.S. at page 351, 29 S.Ct. 370. Except for the action of the Swiss Federal Attorney, explicitly designed to prevent their production in this case,[14] the documents could have been produced. For the District Court to hear and decide the case without them might give plaintiff a decisive advantage, leading to recovery of extremely valuable property notwithstanding, were the papers produced, Chemie might be shown to be enemy tainted, in which case the property would be withheld by the United States under existing legislation. True, there is no certainty about this. Uncertainty as to the part the undisclosed papers would play creates the difficulty. But, in view of the findings of the District Court, we think due process of law does not require the Custodian to sustain with certainty prior to trial the proposition that the undisclosed papers would defeat Chemie, or the proposition that Chemie's claim can be defeated without

14. This is illustrated by an order of the Swiss Federal Attorney of June 25, 1951, denying Chemie's request to countermand the seizure order and permit Sturzenegger to produce its books and records. In denying the request, the Swiss authority stated: "The said order [seizing constructively the books and records] applies exclusively to the firm Sturzenegger & Co. * * * and against the order of the American court in respect of this banking firm for the

production of its business records to the United States District Court * * *." "The fact that the American authorities wish to inspect the records * * * is exactly what gave rise at that time to the issue of the order * * *." The order itself had expressly described the documents thereby confiscated as "the business records or books of the banking firm * * * ordered to be produced by the American judge".

them. Where, as here, adequate basis underlies the District Court's findings of relevancy and materiality, and of possession, custody or control, except for the Swiss Federal Attorney's order, so that the indicated relationship between Chemie and H. Sturzenegger & Cie. leads reasonably to the conclusion that the records are important in resolving the issue of Chemie's enemy taint, due process of law is not violated by requiring their production as a condition to trial. In other words it is not fundamentally unfair or arbitrary to require Chemie to comply with an order that is designed, in accepted legal fashion, to elicit the truth or, failing compliance, to dismiss its action, when the requirement is shown to have a very real relationship to the means of arriving at the truth of the substantive issues in the litigation.

Due process in the circumstances of the case does not insist that Chemie be allowed to go to trial in a manner inconsistent with accepted procedures, now embodied in the Rules but which long antedate them in development. Handicap in the conduct, and risk in the outcome, of litigation, due to the absence of evidence reasonably determined on the basis of available information to be relevant and material, need not be cast upon a defendant when a plaintiff by action of its own government is disabled from complying with discovery rules applicable generally to litigants under the law of the forum. Switzerland in her own wisdom, upon consideration no doubt of many factors, has rendered her national, Chemie, unable to comply with a valid order of the trial court in an important matter respecting the evidence. The order itself is not inconsistent with due

process of law. Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327. To require compliance as a condition to Chemie's further prosecution of its claim is to insist that if the trial is to go forward it shall do so in accordance with accepted procedures for developing the truth about contested factual issues raised by Chemie, the ultimate objective of the trial. This too is not a denial of due process of law, since, to borrow the test applied to legislation, "the means selected * * * have a real and substantial relation to the object sought to be attained." Nebbia v. New York, 291 U.S. 502, 525, 537, 54 S. Ct. 505, 511, 78 L.Ed. 940.[15] Lapides v. Clark, 85 U.S.App.D.C. 101, 102, 176 F. 2d 619, 620, certiorari denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527. See, also, Minder v. Georgia, 183 U.S. 559, 562, 22 S.Ct. 224, 46 L.Ed. 328; Davidson v. New Orleans, 96 U.S. 97, 107–108, 24 L.Ed. 616, separate opinion of Mr. Justice Bradley; Missouri Pacific Railway Co. v. Humes, 115 U.S. 512, 519, 520, 6 S. Ct. 110, 29 L.Ed. 463; Ballard v. Hunter, 204 U.S. 241, 255, 27 S.Ct. 261, 51 L.Ed. 461; Endicott-Johnson Corp. v. Encyclopedia Press, 266 U.S. 285, 288, 45 S.Ct. 61, 69 L.Ed. 288; Steward Machine Co. v. Davis, 301 U.S. 548, 584–585, 57 S.Ct. 883, 81 L.Ed. 1279; Carolene Products Co. v. United States, 323 U.S. 18, 31–32, 65 S.Ct. 1, 89 L.Ed. 15.

It will be seen from the foregoing discussion that our view, like that of the court below, does not lean heavily upon the theory of a factual presumption adverse to the one who fails to produce the papers ordered, as in Hammond Packing Co. v. Arkansas, supra, nor upon the theory of punishment, discredited in

15. In *Hagar v. Reclamation District No. 108,* 111 U.S. 701, 708, 4 S.Ct. 663, 667, 28 L.Ed. 569, the Supreme Court said:

"* * * It is sufficient to observe here, that by 'due process' is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and wherever it is

necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. The clause * * * means, therefore, that there can be no proceeding against life, liberty, or property which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights. * * *"

Hovey v. Elliott, supra. Though there may be some element of adverse factual presumption, we rely chiefly on the necessity for discovery as an aid in the development of facts. This is particularly important in such a case as this, where the intricacies of relationships are so difficult to unfold and their geographical local is centered so close to the former enemy, and where the secrecy laws which Switzerland deems wise prevent discovery which on adequate showing is deemed material to the case.

■ What we have here said is fortified by established legal principles. It is settled that "the fullest possible knowledge of the issues and facts before trial" is intended by the rules governing discovery. Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 389, 91 L.Ed. 451. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Ibid., 329 U.S. at page 507, 67 S.Ct. at page 392. In Dixon's Ex'rs v. Ramsay, 3 Cranch 319, 7 U.S. 319, 324, 2 L.Ed. 453, involving the authority of an executor appointed in a foreign country to sue in the courts of this country, Chief Justice Marshall said: "No man can sue in the courts of any country, whatever his rights may be, unless in conformity with the rules prescribed by the laws of that country." "[S]ubstantive matters are governed by the foreign law, and * * * procedural matters, or, as it is more usually expressed, matters relating to the remedy are governed by the law of the forum." 3 Beale, Conflict of Laws (1935) 1600. Don v. Lippman, 5 Cl. & Fin. 1, 7 Eng. Rep. 303, 307 (H.L.1837). In a footnote to the opinion of the Court in Guaranty Trust Co. v. United States, 304 U.S. 126, at page 134, 58 S.Ct. 785, 82 L.Ed. 1224, it is said that a foreign sovereign suing as a plaintiff must give discovery, citing Rothschild v. Queen of Portugal, 3 Y. & C.Ex. 594, 596; United States v. Wagner, L.R. 2 Ch.App. 582, 592, 595; Prioleau v. United States, L.R. 2 Eq. 659. See, also, King of Spain v. Hullett, 7 Bligh N.S. 359, 392–3 (H.L.1833). A foreign national is in no better position.

The Prize Cases, now to be considered, are also enlightening as to the force which the courts have recognized as residing in rules or court orders requiring discovery. Discovery has been insisted upon notwithstanding it was forbidden by the law of the sovereign of the claimant; and failure on his part to make discovery has at times resulted in dismissal of his claim.

In The Consul Corfitzon [1917] App. Cas. 550, Swedish claimants to cargo seized on the high seas appealed from an order of the Admiralty Division requiring them to produce certain books of account and other documents. They had declined on the grounds they might become liable to penalties under Swedish law. In affirming the discovery order the Privy Council stated that "a Court of Prize cannot properly be deterred from making * * * the appropriate order because a neutral claimant would, if he obeyed the order, be guilty of a breach of his own municipal law", ibid., p. 555, adding that the "practice and procedure [of the forum] are governed by the municipal law of the State from which it derives its jurisdiction".

In Steamship "Antilla" and Other Vessels, 7 Lloyd's Prize Cases 401, broad discovery orders of the Consul Corfitzon variety had been made relating to claimants' business books, but had been complied with only partially. Claimants, being unable to promise full compliance, requested permission to try the case on the evidence available. The court denied the request and struck the claims, stating:

> "* * * that when orders are made by this Court, and are not appealed from, they must be taken to be valid orders, and they must be obeyed. If they are not obeyed, those claimants upon whom they are made will be in contempt and their claims will be liable to be struck out. * * * " (Ibid., p. 405)

The Baron Stjernblad [1918] App.Cas. 173, 178, reiterated the Prize Court's policy of refusing "to accept the dictates of any municipal law as to what discov-

ery ought or ought not to be insisted on either generally or in any particular case." The Privy Council recognized the foreign claimant was put· in the anomalous position of either losing his case or incurring penalties in his own country, but pointed out that "the anomaly is certainly not due to any defect in the practice of the Prize Court or in the law which it administers." Ibid., p. 179.

There is a reference to Kronprinsessan Margareta in 6 Lloyd's Prize Cases 105n. The Privy Council is said to have denied leave to appeal from the dismissal of a claim when the Swedish claimant declined to answer some of the interrogatories administered to it on the court's authorization because permission to answer had been requested and denied by the Swedish government. It was said this refusal made no difference in the Prize Court.

In The Kronprinzessin Victoria [1919] App.Cas. 261, a trial had taken place, at which the claimants declined to produce their books in court because of Swedish laws. Holding that the court properly refused to let the Swedish secrecy law affect its weighing of the evidence in deciding against claimants the Privy Council pointed out, at p. 267, that "if the evidence by which their case might have been cogently supported was required for their other business in Sweden, it was for them to choose whether they would conduct their case or their business to the better advantage."

In Re Von Kantzow's Patent [1944] Ch. 318, 321, was a non-prize case where applicants sought extension of certain British patent rights in order to recoup revenue losses allegedly suffered during the war. Due to Swedish secrecy laws they were unable to furnish evidence that they had not made countervailing profits abroad during the war. Consistently with the prize-case principle of maintaining discovery orders over contrary foreign law, the court said:

" * * * It appears to me that this court, having placed on it the delicate task of determining whether its discretionary jurisdiction should be exercised in favour of an applicant in a matter in which the public interest also is concerned, must be told all the relevant facts. If an applicant is the subject of a foreign State and is precluded by his municipal law from giving the necessary information to the court, that is his misfortune."

Chemie might have some remedy at the hands of its own government for any loss it can place at her door, but this of course is beyond our help. We merely note that when Switzerland takes action of the character here involved, which she deems beneficial to herself and her nationals as a whole, the disadvantage caused a particular national in litigation abroad is fairly left where the law of the forum places it.

We have considered an alternative solution; that is, to permit the case to go to trial without the unproduced papers, as was requested and denied in Steamship "Antilla" and Other Vessels, supra, with possible action, because of failure to produce, to await eventualities. If Chemie were unable to show the absence of enemy taint, or failed in other respects to prove its case, judgment would be rendered for the Custodian on the merits. And if Chemie did make out its case but in the court's view the unproduced documents might if available lead to a different result, the court could then dismiss if the failure to produce persisted. But we think the District Court was not required to adopt this alternative. Since dismissal was within its powers we should not without strong reasons disapprove the manner in which it exercised control over litigation of which it bears the heaviest burden. Years have been consumed in preliminaries and in efforts to obtain full discovery as ordered. The District Court has become thoroughly acquainted with the factors which led to its decision. We cannot say it has abused its discretion or acted unjustly, or that its failure to adopt some other possible course constitutes reversible error. We add in this connection that not only production, but production before trial,

is important; for the Custodian should have the benefit of discovery for cross-examination and preparation.[16] Moreover, the alternative suggested, with no definite conclusion in sight, would be a very unsatisfactory way of proceeding with a long trial.

One modification, however, we deem advisable, namely, that dismissal of the complaint with prejudice shall not become effective until six months after the receipt by the District Court of the mandate of this court in this case, and not then if within such period discovery is made as ordered.[17] This will afford another opportunity to bring the case on for a trial and decision on the merits.

Affirmed with modification.

16. This would be so even were the court to refer the matter to a Special Master in order to save some of its own time.

17. We speak of discovery in general terms, since there is no reason to think that the District Court will require actual production in the United States if other arrangements, such as for inspection or copying in Switzerland, can reasonably be made.