Andreas ARNDT, Magus Verwaltungs GmbH, and Trustees of I.G. Farben Aktionarsvereinigung e.V., Plaintiffs,

v.

UBS AG, a/k/a Union Bank of Switzerland, a/k/a UBS (USA) Inc., a/k/a UBS Paine Webber, successors in interest to asserts of I.G. Farben AG of Germany in Switzerland, the assets of I.G. Chemie AG a shell, cloaked or alterego company and/or a subsidiary, daughter, managed, controlled by I.G. Farben AG, successors in interest to assets of Internationale Industrie und Handelsbeteiligungen AG a/k/a Interhandel, Basel a/k/a International Holdings in Industry and Commerce, and United States of America, Defendants.

No. 04–CV–751.

United States District Court, E.D. New York.

Nov. 1, 2004.

Edward D. Fagan, Short Hills, NJ, for Plaintiffs.

## MEMORANDUM & ORDER

GLASSER, District Judge.

Plaintiffs bring this action against defendant UBS AG ("UBS" or "Defendant") for an accounting, imposition of a constructive trust, fraud, misrepresentation, spoliation of evidence, and unjust enrichment. Plaintiffs name the United States as a party to this case in an effort to obtain certain documents from the Government to support its claims against UBS. In sum, Plaintiffs contend that UBS, as a successor-in-

interest to I.G. Farben ("Farben"), a German company which profited during the Nazi regime, failed to turn over assets which rightfully belong to Holocaust victims. Pursuant to, *inter alia,* Fed. R.Civ.P. 12(b)(1) and 12(b)(6), UBS now moves to dismiss the Amended Complaint ("Am.Compl.") for the following reasons: (1) the Court lacks subject matter jurisdiction over the claims; (2) Plaintiffs do not have standing to assert the claims in the Amended Complaint; (3) under principles of comity, the Court should give preclusive effect to the judgment of a German court dismissing the same claims alleged in this case; and (4) the political question doctrine precludes litigation of the non-justiciable questions presented in the Amended Complaint.

In addition, pursuant to 28 U.S.C. § 1651(a), the All–Writs Act, Defendant requests the Court to enjoin the plaintiffs in a related, and virtually identical case, *Makro Capital of Am., Inc. v. UBS AG, et al.,* Index No. 04–21917, pending in the Southern District of Florida, filed well after Plaintiffs initiated this action, from taking any further action to prosecute that case and directing that the *Makro* action be dismissed voluntarily and refiled in this District as related to this case.

Finally, Plaintiffs have filed a motion for "preservation, identification, inventorying and production of certain specific documents relevant" to their claims (the "Preservation Motion"), and the Trustees of Farben have filed a motion pursuant to Fed.R.Civ.P. 41(a)(1)(i) for voluntary dismissal of the Amended Complaint without prejudice.

For the reasons set forth below, Defendant's motion to dismiss the Amended Complaint for lack of subject matter juris-

diction is granted, and therefore it is unnecessary to address Defendant's alternate arguments.[1] The Court dismisses the claims against the Trustees of Farben without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(i). Moreover, the Court denies Defendant's motion pursuant to 28 U.S.C. § 1651(a). In addition, the Court denies the Preservation Motion as moot in light of its dismissal of the Amended Complaint.

## BACKGROUND

Plaintiffs Andreas Arndt, an individual, and Magus Verwaltungs, a business entity, are German citizens and shareholders of I.G. Farben ("Farben"), a company incorporated under the laws of Germany in 1929. (Am.Compl.¶¶ 1, 2, 23–25.) Plaintiff Ludwig Koch was appointed trustee of Farben by a German court on June 25, 2004. (Carroll Supp. Decl. Ex. B.)

In or about 1929, Farben founded I.G. Chemie ("Chemie"), a company organized under the laws of Switzerland, which it purportedly controlled at all times. (Am. Compl ¶¶ 1, 2). In the 1930's, Chemie, at the direction of Farben, acquired significant stakes in several United States companies, including General Aniline & Film Corporation ("GAF"). (*Id.* ¶ 3). After World War II, Chemie changed its name to Interhandel. (*Id.* ¶ 8). UBS AG, the Defendant, a Swiss bank, is a successor-in-interest to Interhandel. (*Id.* ¶ 31).

In this action, Plaintiffs seek to recover GAF shares that were returned to Interhandel (referred to as the "Interhandel Assets") following a more than sixteen year litigation in the United States that concluded in a settlement in 1964 to which the United States was a party. *See generally Societe Internationale Pour Partic-*

---

1. As set forth below, because the Court does not have subject matter jurisdiction to hear Plaintiffs' claims, it also dismisses the one

"cause of action" asserted against defendant the United States of America for "documents."

*ipations Industrielles et Commerciales, S.A. v. McGranery,* 111 F.Supp. 435 (D.D.C.1953), *order modified by,* 225 F.2d 532 (1955), *cert. denied,* 350 U.S. 937, 76 S.Ct. 302, 100 L.Ed. 818 (1956). That suit arose out of the United States government's seizure of the Interhandel Assets in or about April, 1942, after the commencement of World War II, pursuant to the Trading with the Enemy Act ("TWEA"), 50 U.S.C. app. §§ 1–44. (Am. Compl.¶ 21(e)). The government seized the assets claiming that because Farben effectively controlled Chemie, the assets belonging to Chemie had an enemy taint.[2] (*Id.*). The United States used the proceeds from those assets to compensate the United States for the cost of its war effort and post-war reconstruction. (*Id.*)

In 1947, Interhandel (which had changed its name from Chemie in 1945) commenced litigation in the United States under section 9(a) of the TWEA to recover the Interhandel Assets, claiming to be a neutral Swiss company, rather than one controlled by Farben, a German company. (Am.Compl.¶ 9.) Farben unsuccessfully attempted to intervene in the litigation. (Carroll Decl. Ex. F, attaching order denying motion for leave to intervene issued in *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* No. 4360–48, at 1 (Dec. 19, 1958).) According to Plaintiffs, during the course of that litigation, Interhandel failed to produce a number of documents which reveal that Interhandel is in fact a successor-in-interest to Farben. (Am. Compl.¶ 11.) After sixteen years of pretrial proceedings, the United States and

Interhandel ultimately reached a settlement pursuant to which the United States returned to Interhandel 40–45% of the 1966 auction value of the Interhandel Assets.[3] (*Id.* ¶ 12.)

Farben was ordered liquidated and in 1983, sued the predecessor of UBS in a German court to determine which entity rightfully owned the Interhandel Assets. (Def. Mem. at 8.) There, Farben claimed that Interhandel was merely a front for Farben. In 1988, the Frankfurt court of appeals rejected Farben's claim and the German supreme court denied a petition for certiorari. (*Id.;* Carroll Decl. Ex. H (attaching Higher Regional Court decision) and Carroll Decl. Exh. I (attaching denial of certiorari petition)).

During the 1990's, there were several mass lawsuits brought by and on behalf of victims of Nazi persecution against industrial and financial firms concerning their World War II-era activities, resulting, in particular, in the Swiss World War II Class Action Settlement pending before this Court and the German Foundation Initiative. *See, e.g., In re Holocaust Victims Assets Litig.,* Nos. 96–4849, 96–5161, 97–461, 105 F.Supp.2d 139 (E.D.N.Y.2000) (approving settlement) (Korman, J.). Victims of Farben's forced labor programs are eligible for compensation from these settlements. *Id.*

Plaintiffs now claim that UBS wrongfully withheld assets that can be traced directly to Farben and that should have been made available to restitution programs or used in accordance with the di-

---

2. The TWEA grants the President broad powers to control most forms of trade and business transactions during war times, including the ability to freeze and block foreign assets and subsequently to transfer title to those assets in the United States. *See* 50 U.S.C. app. § 5(b)(1); Def. Mem. at 3.

3. Plaintiffs have named the United States of America as a defendant, seeking to obtain certain documents from the government as a result of its involvement in the seizure of the Interhandel Assets and the subsequent litigation thereover. (Am.Compl.¶¶ 97–146).

rective of the Nuremberg tribunals and German courts. (Am.Compl.¶ 16.) According to Plaintiffs, UBS concealed, misrepresented, altered and/or destroyed evidence of its predecessor's connection to Farben. (*Id.*) By order to show cause, Plaintiffs commenced this action against UBS. Defendant UBS has now moved to dismiss the Amended Complaint against all parties.

### *DISCUSSION*

### I. Motion to Voluntarily Dismiss Amended Complaint Without Prejudice

 Initially, the Court must decide whether Plaintiff Trustees of Farben properly effected voluntary dismissal of the Amended Complaint. On July 27, 2004, three days prior to the Court's hearing on Defendant's motion to dismiss the Amended Complaint, plaintiff Ludwig Koch, as Trustee of Farben, filed a notice of voluntary dismissal, without prejudice, of all claims asserted on behalf of Farben.[4] Fed.R.Civ.P. 41(a)(1)(i) provides that an action may be dismissed by plaintiff without order of the court "by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment." Pursuant to this rule, the Court is required to grant Farben's voluntary dismissal without prejudice because Defendant has not served either an answer or motion for summary judgment.

 It is well established that "[a] motion to dismiss under Rule 12 does not terminate the right of dismissal by notice." *See, e.g., Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 15 (E.D.N.Y.1996) (citing 8A Charles A. Wright & Arthur R.

Miller, Federal Practice and Procedure § 2263 at 259 (2d ed 1995)); *see also International Communications, Inc. v. Rates Technology, Inc.*, 1988 WL 49214, at * 1 (E.D.N.Y.1988) (plaintiff's filing of an affidavit in opposition to motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) does not preclude filing of voluntary dismissal of complaint). Moreover, the fact that Farben may have styled its dismissal here as a "motion" rather than a "stipulation" is inconsequential—the Court must give effect to it despite the nomenclature that the party used. *Horton,* 169 F.R.D. at 15; *see also Sheldon v. Amperex Elec. Corp.*, 52 F.R.D. 1, 6–8 (E.D.N.Y.1971) (dismissal without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(I) granted even where parties engaged in extensive discovery but prior to service of answer or motion for summary judgment), *aff'd,* 449 F.2d 146 (2d Cir. 1971). Accordingly, pursuant to Fed. R.Civ.P. 41(a)(1)(i), the Court dismisses the claims of the Trustees of Farben without prejudice.

### II. Subject Matter Jurisdiction Challenge

 Defendant challenges the subject matter jurisdiction of this Court to hear Plaintiffs' claims. On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the burden of establishing jurisdiction, by a preponderance of the evidence, rests with the party asserting that it exists. *See Correspondent Servs. Corp. v. JVW Investment, Ltd.*, 2004 WL 2181087, at *6 (S.D.N.Y. Sept.29, 2004) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942) and *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000)). While the Court is constrained to accept the ma-

---

4. Plaintiffs Andreas Arndt and Magus Verwaltungs GmbH have not filed either a stipulation or motion to dismiss the Amended Com-

plaint pursuant to Fed.R.Civ.P. 41(a)(1)(i) and thus the Court addresses the merits of Defendant's motion with respect to their claims.

terial factual allegations in the Amended Complaint as true for purposes of this motion, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998) (citation omitted). The Court "may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings," including affidavits or other evidence which the parties submit. *Correspondent Servs. Corp.*, 2004 WL 2181087, at *6 (citing *e.g., Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 161 n. 30 (2d Cir.2003)).[5]

At the hearing on Defendant's motion to dismiss the Amended Complaint, the Court granted Plaintiffs leave to submit additional evidence to cure the jurisdictional defects, if any, that may warrant dismissal of their claims. However, Plaintiffs failed to submit any evidence to support their contention that this Court is vested with subject matter jurisdiction to decide their claims. Indeed, in opposing Defendant's motion to dismiss, Plaintiffs failed to offer any evidence or even legal argument why the Court has subject matter jurisdiction to hear their claims. Therefore, Plaintiffs' only support for the proposition that the Court has subject matter jurisdiction in this case is found in one paragraph of the Amended Complaint: "the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1350—the Alien Tort Claims Act and 28 U.S.C. § 1351—the Torture Victims Protection Act, insofar as restitution, reparations and damages recovered are to be used in great part to pay reparations and restitution for and/or damages to victims of I.G. Farben related slave/forced labor, concentration and/or extermination camp operations and atrocities, and whatever other obligations as I.G. Farben AG (or in liquidation) may have in accordance with existing contracts and directives from the Nuremburg Tribunals and/or laws or Court Orders of the Federal Republic of Germany." (Am.Compl.¶ 35). Each of the two federal statutes which Plaintiffs argue

---

**5.** The complaint does not confer subject matter jurisdiction on the Court pursuant to the diversity statute, 28 U.S.C. § 1332, because aliens are parties on both sides of the litigation ledger. *See Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir.1980) ("[T]he presence of aliens on two sides of a case destroys diversity jurisdiction"), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *accord IIT v. Vencap Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975). Plaintiffs are alleged to be German citizens, Am. Compl. ¶¶ 23–26, and UBS AG is a corporation organized under the laws of Switzerland with a subsidiary operating in the United States, *id.* ¶¶ 27, 31; *see also www.sec.gov/divisions/corpfin/internatl/geo2001.htm*, which lists foreign companies registered and reporting with the United States Securities & Exchange Commission (indicating that UBS AG is incorporated in Switzerland) (web-site last visited on October 27, 2004); *Societe Internationale Pour Participations Industrielles et Commerciales, S.A.*, 111 F.Supp. at 437 (Interhandel is organized under the laws of Switzerland). The fact that one or more of UBS AG's subsidiaries in the United States may have headquarters in the United States or may be incorporated in the United States does not affect the conclusion that UBS AG is considered an "alien" for diversity purposes. In *Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1101 (2d. Cir.1986), *cert. denied*, 484 U.S. 826, 108 S.Ct. 94, 98 L.Ed.2d 54 (1987), the Court applied the Section 1332(c) definition of citizenship and found that even though the defendant was a Canadian corporation with a branch office in the United States, in determining the citizenship of a foreign corporation under Section 1332(c), "[a]n alien corporation's worldwide principal place of business, and not its principal place of business within the United States, is controlling." Thus, UBS AG, as the Swiss-based successor to Interhandel and Chemie, incorporated in Switzerland, is deemed to be a Swiss citizen for purposes of 28 U.S.C. § 1332 because its worldwide principal place of business is in Switzerland.

confer the Court with subject matter jurisdiction is analyzed in turn.

## A. The Alien Tort Claims Act

■■■ The Alien Tort Claims Act ("ATCA"), first enacted as part of the Judiciary Act of 1789, grants a federal district court jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Under the ATCA, therefore, federal subject matter jurisdiction exists when (1) an alien, (2) claims a tort, (3) was committed in violation of a United States treaty or the "law of nations"—the latter now synonymous with "customary international law." *See, e.g., Flores v. Southern Peru Corp.,* 343 F.3d 140, 143 & n. 2 (2d Cir.2003) (citing *e.g., Kadic v. Karadzic,* 70 F.3d 232, 239 (2d Cir.1995)). In this case, Plaintiffs satisfy elements one and two of the ATCA because they are aliens (*i.e.,* German citizens) and have alleged one or more torts in the Amended Complaint (*e.g.,* conversion). Plaintiffs do not assert that any United States treaty has been violated and thus the dispositive issue for subject matter jurisdiction is whether the Amended Complaint adequately alleges that UBS violated "customary international law."

The question whether a party has alleged a violation of "customary international law" (or the "law of nations") has found no easy answer. In *Sosa v. Alvarez–Machain,* — U.S. ——, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004), the Supreme Court held that ATCA was primarily a jurisdictional statute that did not offer litigants new causes of action. The Supreme Court expressly acknowledged the danger that may occur when judges recognize claims "for violations of any international law norm with less definite content and acceptance among civilized nations than

the historical paradigms" which existed at the time Congress passed the ATCA. *Sosa,* 124 S.Ct. at 2765. Nonetheless, the Supreme Court recognized "that an opening, however small, exists for courts to consider claims asserting new causes of action under the ATCA," although the Supreme Court acknowledged that "good reasons exist for a restrained conception of the discretion a federal court should exercise in considering a new cause of action under the ATCA." *Weiss v. American Jewish Committee,* 2004 WL 2072080, at *5 (S.D.N.Y. Sept.14, 2004) (citing *Sosa,* 124 S.Ct. at 2761).

Further, and consistent with the Supreme Court's holding in *Sosa,* the Second Circuit has held that a party claiming relief under the ATCA must identify the specific international law that the defendant allegedly violated. *See Kadic,* 70 F.3d at 238. This is a higher pleading standard than that typically required, including under the more flexible "arising under" formula of federal question jurisdiction under 28 U.S.C. § 1331. *Id.; cf. Jones v. Nassau County Sheriff Dep't,* 285 F.Supp.2d 322, 324 (E.D.N.Y.2003) ("whether a federal court possesses federal-question subject matter jurisdiction and whether plaintiff can state claim for relief under federal statute are two questions that are easily, and often, confused;" if basis for jurisdiction is also an element of a cause of action, a court only asks whether, on its face, complaint is drawn so as to seek recovery under federal law and if so, will assume jurisdiction and reserve further scrutiny for inquiry on merits).

In *Flores,* 343 F.3d at 154, the Second Circuit recognized the difficulty that courts face when determining whether challenged conduct violates "customary international law" because it is "discerned from myriad decisions made in numerous and varied international and domestic are-

nas." The court in *Flores* held that to be actionable, the asserted rule of international law must be (1) "universally recognized" by states; (2) establish a legal obligation; (3) address wrongs that are of mutual, and not merely individual, concern to states; and (4) specific enough to be enforced. *Id.* at 154–56; *see also Filartiga v. Pena–Irala,* 630 F.2d 876, 888 (2d Cir.1980) (under the ATCA, a defendant's conduct must violate "well-established, universally recognized norms of international law"). In "determining what offenses violate customary international law, courts must proceed with extraordinary care and restraint." *Flores,* 343 F.3d at 154.

Here, Plaintiffs do not identify any principle of international law that they rely on to make out a claim under the ATCA. To the contrary, in opposition to Defendant's motion to dismiss, Plaintiffs assert that this case "is a contract action" involving a "German contract."[6] (Pls. Mem. at 2). Their specific causes of action are predicated on garden variety commercial claims, including fraud, unjust enrichment, conversion and misrepresentation which, according to Plaintiffs, are based on UBS's failure to "come clean" about its historical relationship to Farben. Thus, the question before the Court is whether these common law claims amount to a violation of customary international law. The Court finds that the law provides a relatively easy answer to this question, even though in general, the ATCA has posed "complex and controversial questions regarding" its "meaning and scope." *Flores,* 343 F.3d at 153. This is so because "[e]ven if certain conduct is universally proscribed by States in their domestic law, that fact is not necessarily significant or relevant for purposes of customary international law." *Id.* at 155.

For example, in *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1015 (2d Cir.1975), the Second Circuit refused to apply the ATCA to a suit by an international investment trust organized under the laws of Luxembourg against a Bahamian corporation and others, for fraud, conversion, and corporate waste in conjunction with a securities scheme. In its decision, the court did not accept the plaintiffs' view that the Eighth Commandment, "Thou shall not steal," is part of "customary international law" for purposes of jurisdiction, because while every civilized nation "doubtless has this prescript as a part of its legal system, a violation of the 'law of nations' arises only when there has been a violation by one or more individuals of those standards, rules, or customs (a) affecting the relationship between states or between an individual and a foreign state, and (b) used by those states for their common good and/or in dealings *inter se.*" *IIT,* 519 F.2d at 1015

---

6. In the Amended Complaint, Plaintiffs make a passing reference to payment obligations that Farben allegedly has "in accordance with existing contracts and directives from The Nuremburg Tribunals and/or laws or Court Orders of the Federal Republic of Germany." *See* Am. Compl. ¶ 35. However, these allegations do not constitute claims that UBS violated the Nuremburg Tribunals or any other internationally recognized rule of law. *Cf. Bodner v. Banque Paribas,* 114 F.Supp.2d 117, 127 (E.D.N.Y.2000) ("In this case, plaintiffs have clearly pled events which, if proven, are clear violations of international law. The alleged looting, conversion, and continued withholding of assets which rightfully belonged to plaintiffs clearly violate the Nuremberg Principles and longstanding principles of customary international law"). Indeed, as Defendant notes in its memorandum, if Plaintiffs are correct that UBS's predecessor was controlled by Farben after 1940, including during World War II—the issue litigated in the United States for sixteen years beginning in 1948—the Interhandel Assets which Plaintiffs claim should be rightfully returned to them for distribution to Holocaust survivors, would be the property of the United States, which had seized them initially for just that reason. Def. Mem. at 14.

(concluding that ATCA is to be applied only in extraordinary circumstances); *see also Zapata v. Quinn,* 707 F.2d 691, 692 (2d Cir.1983) (only rules prohibiting acts that are "shockingly egregious" likely to give rise to violation of universally recognized principles of international law) (*per curiam*); *Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico S.A.,* 528 F.Supp. 1337, 1347 (S.D.N.Y.1982) (jurisdiction unavailable under the ATCA because "commercial violations" do not constitute violations of international law), *aff'd on other grounds,* 727 F.2d 274 (2d Cir. 1984); *De Wit v. KLM Royal Dutch Airlines, N.V.,* 570 F.Supp. 613, 618 (S.D.N.Y. 1983) (action for, *inter alia,* the alleged withholding of wages and benefits does not confer subject matter jurisdiction under the ATCA because the alleged causes of action did not amount to the "extraordinary circumstances" required for invocation of that statute).

Courts outside this Circuit have also held that the types of claims which Plaintiffs assert in the Amended Complaint do not constitute violations of international law recognized by the ATCA. *See, e.g., Abiodun v. Martin Oil Service, Inc.,* 475 F.2d 142, 145 (7th Cir.1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973). In *Abiodun,* the Seventh Circuit affirmed the district court's holding that the ATCA did not vest jurisdiction under the ATCA for an aliens' cause of action allegedly sounding in the tort of fraud but violating no international law. The plaintiffs, Nigerian citizens, had signed contracts with an oil company for training as executives in the United States and subsequent employment in Nigeria. After they arrived in the United States, the plaintiffs discovered that they were to be trained not as executives, but only as service station operators. The plaintiffs argued that subject matter jurisdiction was conferred on the district court under the ATCA on the theory that the defendants' conduct constituted a tort in violation of the "law of nations," alleging that on its face, the claim was for breach of contract and fraud. In response to the plaintiffs' argument that fraud is considered immoral and unlawful by all nations and thus is a violation of the "law of nations," the court said that although the concept of "law of nations" is an elusive one, there was nothing in the authorities cited by the plaintiffs that would support such an expansive interpretation of federal court jurisdiction under the statute. *Abiodun,* 475 F.2d at 145; *see also Maugein v. Newmont Mining Corp.,* 298 F.Supp.2d 1124, 1130 (D.Colo.2004) (dismissing ATCA claim and finding that while defamation "is a tort under American law and, presumably, the domestic law of many other nations[,][i]t is not, however, a subject of the proscriptions of the law of nations or any of the treaties and sources of international law cited in this case"); Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3661.1 (subject matter jurisdiction under ATCA "has been limited to cases involving violations of norms of human conduct recognized by a consensus of the international community; for example, jurisdiction has been granted in cases involving official torture, genocide, bombings, violations of diplomatic immunity, and violations of a treaty, but denied in cases involving unseaworthiness or negligence, fraud or deceit, property damage incurred outside the United States in wartime, terrorist attacks, and alleged violations by the President of the constitutional provision reserving to Congress the power to declare war") (citations omitted).

A close review of the Amended Complaint reveals that Plaintiffs have not alleged any, let alone, specific facts demonstrating that Defendant violated "customary international law" (or a

treaty of the United States). The claims asserted in the Amended Complaint—including fraud, conversion and misrepresentation—may be legal theories that can be advanced in many if not all States, but these are not "wrongs" expressed by mutual concern and reflected in "international accords." *Flores*, 343 F.3d at 155–56 (citing *IIT v. Vencap, supra*). Because of this essential pleading deficiency, Plaintiffs do not state a claim for relief under the ATCA within the subject matter jurisdiction of this Court.

### B. Torture Victims Protection Act

 The Court finds that an identical conclusion must be reached with regard to the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 (and note). The TVPA, which Congress passed in 1992 and the text of which was reprinted in the historical and statutory notes to 28 U.S.C. § 1350, establishes a cause of action in federal court against an individual who, under actual or apparent authority, or color of law, of any foreign nation subjects an individual to torture or extrajudicial killing. *See Flores*, 343 F.3d at 152–53. "Though the [TVPA] creates a cause of action for official torture, this statute, unlike the" ATCA, "is not itself a jurisdictional statute." *Kadic*, 70 F.3d at 246. Rather, the TVPA allows parties "to pursue their claims of official torture under the jurisdiction conferred by the" ATCA and "also under the general federal question jurisdiction of section 1331." *Id.* (citing *Xuncax v. Gramajo*, 886 F.Supp. 162,

178 (D.Mass.1995)); *see also Flores*, 343 F.3d at 153 ("The Senate Report on the TVPA states that the statute was intended to establish an unambiguous basis for a cause of action that has been successfully maintained under the ACTA") (internal quotations and citation omitted).

Whether subject matter jurisdiction for a claim asserted under the TVPA must be conferred on this Court through the ACTA or can be based solely on 28 U.S.C. § 1331 is a thorny issue which the Court does not need to resolve in deciding this motion. *Flores*, 343 F.3d at 153 (recognizing a split of authority on the issue whether a claim under the TVPA may be based solely on § 1331). Here, Plaintiffs fail to satisfy either standard.

 As described above, Plaintiffs do not plead the elements of a claim under the ACTA in the Amended Complaint. Further, UBS AG is not an individual, but a corporation, and as such cannot be sued under the TVPA. *Friedman v. Bayer Corp.*, 1999 WL 33457825, at *2 (E.D.N.Y. Dec.15, 1999) (citing *Beanal v. Freeport–McMoRan, Inc.*, 969 F.Supp. 362, 381–382 (E.D.La.1997), *aff'd*, 197 F.3d 161 (5th Cir. 1999)). Moreover, Plaintiffs do not make any allegations in the Amended Complaint that Defendant UBS subjected them (or anyone else) to "torture" or "extrajudicial executions" necessary to make out a claim under the TVPA. Because of these essential pleading deficiencies, the TVPA does not state a claim for relief within the subject matter jurisdiction of this Court.[7]

---

7. If the Court had found that it properly could exercise jurisdiction over Plaintiffs' claims, it would have dismissed the Amended Complaint based on principles of comity and the political question doctrine. As noted above, in 1988, the Frankfurt Court of Appeals rejected the very same claims that Farben asserts in this case that it litigated in Germany. (Carroll Decl. Exh. H). The German Su-

preme Court denied Farben's petition for certiorari from the judgment of the Frankfurt Court of Appeals. (Carroll Decl. Exh. I). Under well established Second Circuit case law, "American courts will normally accord considerable deference to foreign adjudications as a matter of comity." *See, e.g., Diorinou v. Mezitis*, 237 F.3d 133, 142 (2d Cir.2001). Further, since the executive branch of the

### III. Motion for Injunction Pursuant to 28 U.S.C. § 1651(a)

■ Defendant UBS moves the Court pursuant to 28 U.S.C. § 1651(a) to enjoin the prosecution of an action, pending in the Southern District of Florida, *Makro Capital of Am., Inc. v. UBS*, Index No. 04–21917, which it argues has been brought by the same or similar Plaintiffs with identical claims. The Court recognizes that if Defendant is correct about the nature of the *Makro* suit (Plaintiffs have not opposed Defendant's motion), allowing it to proceed would unfairly expose Defendant USB (and defendant United States of America) to further expense and other courts to the wasteful dissipation of their already scarce judicial resources at the expense of parties to other lawsuits. However, the All–Writs Act does not vest authority in this Court to issue the relief which UBS seeks.

■ 28 U.S.C. § 1651(a) states that a district court "may issue all writs necessary or appropriate in aid of" its "respective jurisdiction." Pursuant to this statute, district courts have the "authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." *In re Baldwin–United Corp.*, 770 F.2d 328, 338 (2d Cir.1985); *Neuman v. Goldberg*, 159 B.R. 681, 685 n. 1 (S.D.N.Y.1993) ("Courts frequently use their injunctive powers to maintain control over ongoing federal litigation"); *see also* Moore's Fed. Prac. 3D, ch. 19 § 204.05[2] at 204–20

("The All–Writ Statute is applied appropriately when a district court has properly exercised its jurisdiction in entering an order, it is empowered to issue writs in aid of jurisdiction to" enjoin parties or nonparties who are "in a position to frustrate the order").

However, in contrast to the situation where a district court enjoins the prosecution of a later filed action to protect any judgment it may enter in a pending action and to avoid inconsistent judgments, *see generally Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir.1974), the Court has found, as noted above, that it lacks jurisdiction in this case to decide Plaintiffs' claims. Thus, the All Writs Act cannot be applied here because invocation of that statute would not be in aid of the Court's jurisdiction, which it has expressly disclaimed. *See, e.g., Covanta Onondaga Ltd. v. Onondaga County Res. Recovery Agency*, 318 F.3d 392, 395–401 (2d Cir.2003) (once district court remanded case to state court, it lacked jurisdiction to enjoin party's efforts to obtain relief in bankruptcy court pertaining to that case; such order would not aid or protect district court's jurisdiction because it had no jurisdiction to aid or protect). As such, Defendant's motion pursuant to 28 U.S.C. § 1651(a) to enjoin prosecution of the *Makro* action and require it to be refiled in this district is denied.

### CONCLUSION

For the foregoing reasons, the Court dismisses the claims of the Trustees of I.G.

---

United States government, including the Attorney General and President, were involved in, and approved, the settlement of the same claims which Plaintiffs advance here, *see Schmitz v. Societe Internationale Pour Participations Industrielles et Commericales, S.A.*, 249 F.Supp. 757, 759 (D.D.C.1966), *cert. denied*, 387 U.S. 908, 87 S.Ct. 1684, 18 L.Ed.2d 626 (1967), the political question doctrine

would also preclude Plaintiffs' claims and warrant dismissal of the Amended Complaint. *See, e.g., Greenberg v. Bush*, 150 F.Supp.2d 447, 454 & n. 4 (E.D.N.Y.2001) ("It is wholly inappropriate for the judicial branch to question 'a political decision already made' ") (citing and quoting *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).

Farben Aktionarsvereinigung without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(i); the Court grants Defendant's motion to dismiss the Amended Complaint as against Andreas Arndt and Magus Verwaltungs GmbH pursuant to Fed. R. Civ. 12(b)(1); the Court denies Defendant's motion for an injunction pursuant to 28 U.S.C. § 1651(a); and the Court denies as moot Plaintiffs' motion for preservation, identification, inventorying and production. Accordingly, the Clerk of Court is directed to close this case.

SO ORDERED.